UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE TRUSTEES OF THE TILE, MARBLE
& TERRAZZO INSURANCE TRUST FUND;
TILE, TERRAZZO & MARBLE INDUSTRY
PENSION FUND; TILE, TERRAZZO & MARBLE
INDUSTRY DEFINED CONTRIBUTION
PENSION FUND; TILE, TERRAZZO & MARBLE
INDUSTRY JOINT TRAINING FUND; LABOR
MANAGEMENT FUND; and the TILE,
TERRAZZO & MARBLE INDUSTRY
VACATION AND HOLIDAY FUND,

                Plaintiffs,

                Case No. 10-CV-10106

v.

                HON. GEORGE CARAM STEEH

B&B TILE & MARBLE CO., INC., a Michigan
corporation, SUBURBAN TILE, INC., a Michigan
corporation, KEVIN K. BOHM, an individual,
and WILLIAM JAYNES II, an individual,

                Defendants,

and

SUBURBAN TILE, INC. and
WILLIAM JAYNES II, an individual,

                Defendants/Counter Plaintiffs,

v.

THE TRUSTEES OF THE TILE, MARBLE
& TERRAZZO INSURANCE TRUST FUND;
TILE, TERRAZZO & MARBLE INDUSTRY
PENSION FUND; TILE, TERRAZZO & MARBLE
INDUSTRY DEFINED CONTRIBUTION PENSION
FUND; TILE, TERRAZZO & MARBLE INDUSTRY
JOINT TRAINING FUND; LABOR MANAGEMENT
FUND; and the TILE, TERRAZZO & MARBLE
INDUSTRY VACATION AND HOLIDAY FUND,

                Plaintiffs/Counter Defendants.

_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING
IN PART AND DENYING IN PART DEFENDANTS JAYNES AND
SUBURBAN'S MOTION FOR SUMMARY JUDGMENT, AND
GRANTING DEFENDANTS B&B AND BOHM'S MOTION
FOR SUMMARY JUDGMENT

Before the court are cross-motions for summary judgment.  Plaintiffs are trustees of various benefit funds established under federal law and maintained for the benefit of employees in the tile, marble and terrazzo industry.  In their Amended Complaint, plaintiffs assert five claims against defendants, all arising out of plaintiffs' theory that defendant Suburban Tile, Inc. ("Suburban") is the alter ego of B&B Tile & Marble Co., Inc. ("B&B"), with whom plaintiffs have a collective bargaining agreement.  On March 12, 2010, defendant Suburban filed three counterclaims based on plaintiffs' recording of claims of lien on three Suburban projects.  On October 15, 2010, defendants B&B and Kevin K. Bohm filed a motion for summary judgment on plaintiffs' claims, arguing there is no genuine issue of material fact that an alter ego relationship does not exist between B&B and Suburban. Defendants Suburban and William Jaynes II filed a motion for summary judgment on the same basis and also seek summary judgment on Suburban's counterclaims.  On October 18, 2010, plaintiffs filed a motion for summary judgment on their claims and on the counterclaims.  The parties filed responses and replies to the motions.  Oral argument occurred at a hearing on these motions on January 4, 2011.  For the reasons that follow, plaintiffs' request for summary judgment on their claims is DENIED, defendants' request for summary judgment on plaintiffs' claims is GRANTED, Suburban's request for summary judgment on its counterclaims is DENIED, and plaintiffs' request for summary judgment on Suburban's counterclaims is GRANTED.

BACKGROUND

2

B&B is a tile installation contractor.  B&B operates from 6510 Palms Road, Fairhaven, Michigan.  B&B was incorporated on March 13, 1990, and was established by defendant Bohm and his father.  Bohm and his father have been the only shareholders since B&B's creation.  Bohm was the sole shareholder of B&B stock at all times material to this suit.

Since incorporation, B&B has been a union contractor.  B&B is signatory to a collective bargaining agreement with the Bricklayers and Allied Craftworkers Local No. 1. Under the CBA, B&B is obligated to pay fringe benefit contributions to plaintiffs for B&B's employees.

Jaynes is a former B&B employee and friends with Bohm.  Jaynes worked as a tile installer for B&B until 2000 and then worked as an estimator.  While working as an estimator, Jaynes worked primarily at Bohm's residence.  Jaynes has six home-schooled children and thus was not able to effectively perform his job duties at his own home.

In 2008, B&B laid off employees.  In late 2008, Bohm told Jaynes that he would become a part-time employee and would eventually be laid off.  Jaynes incorporated Suburban on December 5, 2008.  Suburban is a non-union contractor and is wholly owned by Jaynes.  Jaynes began bidding for non-union jobs on behalf of Suburban in early 2009. During that same time period, he also obtained credit approval from various vendors. Jaynes finished work at B&B on June 1, 2009.

After June 1, 2009, Suburban changed its contact information from Bohm's address (which Suburban had been giving to vendors) to Jaynes's address.  Jaynes testified that he still does paperwork at Bohm's residence.  He testified that he uses his own laptop computer and only uses Bohm's residence because his own household is too chaotic.

3

Plaintiffs placed claims of lien on three properties Suburban was working on: St. Kenneth Church in Plymouth, MI; a Kroger store in Ann Arbor, MI; and a Kroger store in Sterling Heights, MI. Jaynes argues these claims of lien made it difficult for Suburban to gain the confidence of customers/general contractors. After two letters from Suburban's counsel, plaintiffs recorded discharges of the claims of lien. However, on June 9, 2010, plaintiffs sent a notice of furnishing to Cabela's, Inc., regarding another Suburban project.

Plaintiffs assert the following claims: delinquent contributions under ERISA (count I); failure to permit updated audit (count II); alter ego/successor liability (count III); builders trust fund (count IV); and breach of fiduciary duties (count V). All of the claims are asserted on the theory that Suburban is an alter ego of B&B. Suburban filed a counter-complaint asserting tortious interference with Suburban's business relationships and seeking recovery of costs and attorneys fees necessitated by plaintiffs' recording of allegedly improper claims of lien.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether

4

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant. Id.

ANALYSIS

Plaintiffs' Claims

Plaintiffs assert defendants are liable for contributions to the funds based on work performed by Suburban based on their theory that Suburban is merely the alter ego of B&B.  Defendants agree that B&B is bound to a collective bargaining agreement but dispute plaintiffs' assertion that any contributions are due, as defendants claim Suburban

5

and B&B are not alter egos.  Both sides seek summary judgment on plaintiffs' claims.

In Trustees of Detroit Carpenters Fringe Benefit Funds v. Industrial Contracting, LLC, 581 F.3d 313, 317-18 (6th Cir. 2009) (internal quotations and citations omitted), the Sixth Circuit discussed the alter ego theory:

> The alter ego doctrine is an equitable doctrine developed to prevent employers from evading obligations under the [National Labor Relations] Act merely by changing or altering their corporate form.  The doctrine operates to bind an employer to a collective bargaining agreement if it is found to be an alter ego of a signatory employer.  We have addressed alter-ego operations that occur in two factual contexts.  The first is when the new entity begins operations but is merely a disguised continuance of the old employer.  The second is what is referred to as a "double-breasted operation," where two or more coexisting employers performing the same work are in fact one business, separated only in form.

In determining whether two companies are alter egos, the court evaluates "'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership.'"  Id. at 318, quoting Nelson Elec. v. NLRB, 638 F.2d 965, 968 (6th Cir. 1981).  The court is also to consider whether there was any intent on the part of the employer to evade obligations under a collective bargaining agreement.  Id.  "In applying these factors, no individual factor is outcome determinative; instead, 'all the relevant factors must be considered together.'"  Id., quoting NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 582 (6th Cir. 1986).

Management

First, the court evaluates whether B&B and Suburban have separate and distinct management.  B&B is managed by Bohm and was also managed by Bohm's father until he passed away two years ago.  Bohm is the only individual with authority to make decisions on behalf of B&B, sign contracts, sign checks, and direct employees.  Jaynes

6

never had any management responsibility at B&B.  He was a tile installer and then an estimator.  Plaintiffs argue Jaynes "continues in his historical role as estimator for both companies."  In support, plaintiffs submit documents showing Jaynes listed as a B&B employee; however, all but one of the documents were created before Jaynes completed his work at B&B and the one dated February 22, 2010 is from an outside company. Moreover, these documents do not show that Jaynes had a management role at B&B.  His role as an estimator did not confer to him any management or supervisory responsibility.

Jaynes argues Bohm has never had any management authority over Suburban. Jaynes states that he is the only authorized signer for Suburban's bank account, the only person with authority to decide which projects to bid on, and the only person with authority to enter into contracts on behalf of Suburban.  However, plaintiffs submit two documents showing instances in which Bohm signed change orders for contracts on behalf of Suburban.  Defendants argue these change orders do not show management of Suburban by Bohm because it is uncontradicted that the change orders were signed by Bohm at the request of Jaynes due to the time sensitive nature of the requests at a time when Jaynes was unavailable to sign.  Bohm notes that he did not list a title on the change orders because he does not hold any title or position with Suburban; Jaynes, as the only one with authority, directed the approval of the change orders .  Plaintiffs also submit a letter from Jaynes on behalf of Suburban to general contractor Tom Moss & Associates in which Jaynes represents that Suburban and B&B are "associated" and that Suburban was started for "smaller, low-profile jobs."  Jaynes argues that his letter was intended to introduce his new company and provide examples of projects he worked on as an employee of B&B. Defendants B&B and Bohm claim the first time they saw this letter, or even knew of its

existence, was when the document was produced in discovery in this case.

Business Purpose

Second, the court considers whether Suburban and B&B share a business purpose. While both are tile installation contractors, defendants argue that because B&B is union and Suburban is not union, the companies do not pursue the same jobs or work on the same projects.  However, plaintiffs submit bid documents which would appear to show that the two companies did, in fact, bid on the same projects.  Defendants responded to these documents by explaining that a project typically uses union labor or non-union labor – not both kinds of labor.  Apparently, on very rare occasions, either an owner may not have decided which type of labor to use or the general contractor will not be clear regarding which type of labor is to be used on the project.  In those situations, both union and non-union contractors bid on the projects.  Defendants B&B and Bohm assert that these rare occasions (represented in plaintiffs' documents) account for less than 1% of the jobs on which they bid.  During the hearing, counsel for plaintiffs admitted that number "could be" correct.  Defendants also represent that, to the best of their knowledge, Suburban and B&B have never worked on the same project.

A court may find a common business purpose exists when the work performed by both companies would be covered work under the collective bargaining agreement.  Elec. Workers Pension Trust Fund of Local Union #58 v. Sky Lite Elec., Inc., Case No. 09-10523, 2010 WL 3866929, *5 (E.D. Mich. Sep. 28, 2010).  Here, the installation of tile is covered work under the CBA.

Operation

Third, a court considers whether the two companies share a substantially identical

8

operation.  Operation typically refers to the day-to-day operation of a company.  B&B and Bohm argue they have no authority to perform any day-to-day operations of Suburban. Likewise, Suburban and Jaynes argue they have no authority to perform any day-to-day operations of B&B. The companies maintain separate bank accounts, file separate tax returns, do not share capital, have separate corporate officers, and do not share storage space for corporate records.  There has never been any exchange of money between the two companies.  The companies maintain separate insurance contracts for general liability and workers compensation insurance.  Defendants argue the companies have never purchased materials for one another or used the other's account with any supplier.

Defendants also argue the companies do not share employees (except for the six-month time period when Jaynes was working for B&B part-time while starting up Suburban).  Suburban has one employee, Jaynes.  Suburban retains tile installation companies as subcontractors to perform work, allegedly without knowing which individuals will actually perform the work.  Defendants argue that some of B&B's former employees started their own companies and have worked as independent contractors for Suburban and other tile contractors.  In such instances, Suburban subcontracted with the company and paid the company for the work performed.  Plaintiffs argue Jaynes's argument that he did not know which individuals would actually perform the work for Suburban is disingenuous because the former B&B employees started sole proprietorships.  Union agent Peter Accica testified that he witnessed Gilbert Robels, Todd Kozey, Emerus Shaw, and John Weir working on both B&B and Suburban job sites, but he did not list the job sites.  Defendants assert that Shaw and Weir did not work for Suburban and that they have not worked for B&B for three or four years.  Robels and Kozey were laid off from B&B and

9

started their own companies.  Those companies worked for Suburban and other tile contractors as independent contractors.  It appears, from Suburban's ledger, that Kozey and Robels performed work for Suburban under Kozey Bros. Tile, G&R Ceramic Tile, Preferred Tile, and Complete Contracting.  Defendants assert Robels and Kozey did not work for B&B at the time they performed work for Suburban and other tile contractors.  Plaintiffs failed to respond with additional argument or evidence regarding the dates or job sites for the alleged employee overlap.

B&B's truck driver, Joel Jozwiak, has also worked for Suburban.  However, as defendants note, Jozwiak did not use B&B's truck when performing work for Suburban.  He used his own truck and billed for his services through his "Amerirent" business venture.  He delivered for Suburban a few times in 2009 but does not appear on Suburban's ledger until March 2010.  He testified that Jaynes asked him if he could delay payment for a short time period.

In addition, plaintiffs submit testimony and documentary evidence showing that Nancy Lauer, a B&B employee, did some billings, typing, and notarizing for Suburban.  However, Lauer testified that she does not answer Suburban's phone, answer faxes, or perform any activities for Suburban similar to those she performs for B&B.  Jaynes has not paid for Lauer's services.

Plaintiffs argue Bohm appears to be managing the operations of Suburban.  In support, Accica testified that he went to one job site and the superintendent told him that the contract was with Suburban and that Bohm was the contact for Suburban.  Accica also testified that, at another job site, the superintendent believed the contract was with B&B and so he called Bohm and Bohm told him the contract was with Suburban.  Defendants

10

argue Accica's testimony is hearsay with respect to what he was told by the superintendents; the court agrees. Morever, even if the evidence was admissible, given Jaynes's long employment with B&B, it is not surprising that people in the industry still associated Jaynes with B&B. Defendants submit the contracts for the jobs at issue showing that Suburban was the contracting party and that Jaynes signed the contracts on behalf of Suburban. Bohm states he did not give any direction or input to anyone on those projects.

Plaintiffs also argue the two companies shared resources. They argue it appears Suburban and B&B share computer software and templates because the template and contract terms for their bidding sheets are identical. Jaynes admitted that he spends time at B&B's offices. Union business agent Peter Accica testified that he saw Jaynes's car at B&B's offices each time he made a trip to B&B's office. Jaynes does not pay rent. Plaintiffs also submitted testimony and documentary evidence showing that Jaynes used the B&B address for Suburban, that Suburban's phone number rang at B&B's office, that checks made payable to Suburban were mailed to B&B's address, and that B&B's fax number was used by Suburban. Defendants argue these documents do not show that the office, fax, and phone line were shared in any way after June 1, 2009, Jaynes's departure from B&B. However, some of the documents referencing Suburban that were created by third parties after June 1, 2009 still list B&B's address, fax number, and/or phone line. Defendants submit evidence showing that the phone number Suburban uses is registered to Suburban and paid for by Suburban.

<u>Equipment</u>

Fourth, the court evaluates whether Suburban and B&B maintain separate and

distinct equipment.  Suburban admits it borrowed equipment from B&B on two occasions - a truck in early 2009 and a small tile rack, also in early 2009.  Defendants B&B and Bohm argue that loaning equipment is common practice in the industry.  Plaintiffs submit testimony from a union agent in which he states that he recovered, from a Suburban job site, a packing slip for tile shipped to B&B.  However, the packing slip is inadmissible as hearsay evidence.  Plaintiffs also submit testimony from union agents stating they saw a B&B equipment on Suburban jobs.  Accica testified that he saw a wet saw and pallet jacks that were labeled B&B.  Hawthorne testified that he saw a saw labeled B&B and a tile rack in a B&B container.  Bohm attests that B&B's wet saw and pallet jacks are not labeled and thus Accica and Hawthorne could not have identified the equipment in this manner.

Customers

Fifth, the court is to determine whether the two companies have substantially identical customers.  Defendants admit that there is a small amount of overlap in the customer base but argue that the two companies do not compete for the same projects because B&B is union and Suburban is not.  As discussed above, plaintiffs submitted documents which appear to show that the two companies submitted bids for the same projects, and some of the B&B bids were even created by Jaynes while he was still working for B&B.  However, defendants assert the instances in which union and non-union companies submit bids for the same project are very rare.  When asked during oral argument whether defendants' assertion that the overlap represented less than 1% of bids submitted was accurate, counsel for plaintiffs admitted that number "could be" accurate. Moreover, defendants B&B and Bohm assert that B&B and Suburban have never even been in contract with the same general contractor at the same time and, more specifically,

12

have never worked together on any project.  Plaintiffs assert B&B and Suburban share a number of customers.  B&B and Bohm admit that, since Suburban's creation, B&B and Suburban have both performed work for Bernco, FH Martin, Frank Rewold & Son, and Stellar Building.  However, defendants argue, the overlap represents a small portion of the work performed by Suburban and B&B.  Based on the chart presented by B&B, B&B performed work for 42 general contractors in the time period between January 2009 and August 2010 and only 4 general contractors overlap with Suburban.  The overlap thus represents less than 10% of the overall number of contractors with whom B&B works.  Based on the same chart, it appears that less than 22% of B&B's projects were for those 4 general contractors.  Defendants also argue that because there are a finite number of general contractors in the industry, many tile companies work with the same general contractors.

Supervision

Sixth, the court evaluates whether Suburban and B&B share substantially identical supervision.  Suburban and its projects are supervised by Jaynes, Suburban's sole owner and employee.  Bohm has never had any supervisory authority for Suburban.  The two change orders signed by Bohm on behalf of Suburban appear to represent isolated instances.  Jaynes does not have, nor has had, any supervisory authority at B&B.  Bohm is the sole supervisor for B&B.

Ownership

Seventh, the court evaluates overlap in ownership.  Plaintiffs do not dispute that Suburban and B&B have separate ownership.  Jaynes owns Suburban.  Bohm owns B&B.  There is no ownership overlap between the two companies.

13

Intent to Evade CBA Obligations

Eighth, the court considers any intent to evade union obligations.  Jaynes argues he decided to go into business for himself when economic realities in Michigan caused B&B to terminate his employment.  He also asserts that no money has been transferred from Suburban or Jaynes to B&B or Bohm.  B&B and Bohm represent that B&B has always fully complied with the CBA by paying fringe benefit contributions and allowing audits to be conducted.  Plaintiffs' only arguments on this factor appear to be merely speculative. Plaintiffs argue that because Suburban's ledgers show checks to entities that were never legally incorporated or were dissolved, Suburban's contractors were "likely" "simply paid in cash."  Plaintiffs argue the documents evidence a "cover-up."  Plaintiffs also argue that because the companies are small, "cash transfers could easily have been accomplished." Plaintiffs provide no rational basis for these arguments.  Plaintiffs also argue that the admission to the general contractor (Tom Moss) that the businesses were associated and the overlap in Jaynes's estimating work for B&B and Suburban indicates intent to evade union obligations.  The court finds plaintiffs' argument unconvincing.

Upon consideration of these eight factors, the court finds summary judgment for defendants is appropriate on the alter ego issue.  The two change orders signed by Bohm, Suburban's letter to Tom Moss & Associates, Suburban's use of Bohm's address, office resources, and some equipment, and Suburban's use of some of the same employees as independent contractors supports plaintiffs' alter ego argument.  However, the overlap between the two companies appears minor and sporadic.  The two change orders and the Tom Moss letter are not significant in light of the volume of work over the two year period at issue.  Bohm and Jaynes are friends and much of the evidence in support of plaintiffs'

14

argument can be construed as evidence of the occasional favor for a friend. Moreover, the companies are owned and managed as separate entities, maintain separate accounts and insurance, and have little customer overlap. There is no evidence that any money was exchanged between the two companies. Aside from the two admitted uses, the evidence is conflicting regarding whether Suburban has used B&B's equipment on jobs. Lastly, the evidence submitted to show an intent to evade is unconvincing at best. Because plaintiffs rely on much speculation and have not provided enough evidence to create a genuine issue of material fact on the alter ego issue, the court grants defendants summary judgment on plaintiffs' claims.

Suburban's Counterclaims

The parties have filed cross-motions for summary judgment on Suburban's counterclaims as well. Suburban alleges it lost business because of the liens filed against certain projects. Plaintiffs seek summary judgment, arguing Suburban admitted, in answers to interrogatories, that it had not identified a single contractor that failed to hire Suburban because of the liens.

To establish a claim of tortious interference with a business relationship, a party must show "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." BPS Clinical Lab. v. Blue Cross and Blue Shield of Michigan, 217 Mich. App. 687, 699 (1996).

First, Suburban had a business relationship as a tile subcontractor to several general contractors. Second, plaintiffs knew of the relationship, as evidenced by their recording of

claims of lien on the projects that were the subjects of the business relationships.  Third, plaintiffs intentionally interfered with the relationship by encumbering the projects with liens. The final requirements of a tortious interference claim, causing a breach or termination of the relationship and resultant damage to Suburban, have not been satisfactorily established by Suburban.  Suburban argues that it was forced to convince customers that their projects would not be encumbered by liens; however, Suburban has not identified a breach or termination of a business relationship or resulting damages.  Indeed, in its answers to interrogatories, Suburban was not able to identify any general contractors who failed to hire Suburban as a result of the liens.  Suburban is therefore not able to satisfy the causation and damages elements of its tortious interference claim.

Suburban also brings claims for costs and attorneys fees resulting from plaintiffs' allegedly vexatious recording of claims of lien.  Suburban cites Federal Rule of Civil Procedure 11 and MCL § 570.1118 in support of these claims.  MCL § 570.1118 addresses actions to enforce construction liens through foreclosure and is therefore inapplicable here. Suburban has also not provided sufficient explanation of the applicability of Rule 11 to this action.

For the reasons set forth above, the court grants plaintiffs summary judgment on the counterclaims asserted by Suburban.

<u>CONCLUSION</u>

For the reasons set forth above, plaintiffs' request for summary judgment on their claims is DENIED, defendants' request for summary judgment on plaintiffs' claims is GRANTED, Suburban's request for summary judgment on its counterclaims is DENIED,

16

and plaintiffs' request for summary judgment on Suburban's counterclaims is GRANTED.

Dated:  February 24, 2011

                                    S/George Caram Steeh
                                    GEORGE CARAM STEEH
                                    UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 24, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk